UNITED STATES of America, Plaintiff,

v.

Robert Calvin SCOTT, Jr., a/k/a Sonny Scott, Robert Calvin Scott, III, a/k/a Scotty Scott and Donna W. Scott, Defendants.

No. CRE91–91–S.

United States District Court,
N.D. Mississippi.

Feb. 13, 1992.

Robert Q. Whitwell, U.S. Atty., John Marshall Alexander, Asst. U.S. Atty., Oxford, Miss., for plaintiff.

Steve Shankman, Memphis, Tenn., Barry Teaque, Montgomery, Ala., for defendants.

## OPINION

SENTER, Chief Judge.

This cause is before the court on defendants' joint motion to dismiss the indictment for failure to state a crime against the laws of the United States. The court conducted a hearing on this matter and is now prepared to issue its ruling.

## BACKGROUND

Defendants, who own S & S Satellite, a retail business in Iuka, Mississippi, were indicted for manufacturing, assembling, modifying, selling, and distributing descrambler devices in violation of 47 U.S.C. § 605(e)(4). Also included in the indictment is a conspiracy count. It is alleged that the descrambler device at issue, the VideoCipher II, would, upon modification, descramble, or decrypt, all satellite cable programs, allowing the user to receive these programs through his home satellite dish without paying any subscription fees.

Subsection (e)(4), which was part of the 1988 amendments to 47 U.S.C. § 605, provides:

Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or is intended for any other activity prohibited by subsection (a),[1] of this section, shall be fined not more than $500,000 for each violation, or imprisoned for not more than 5 years for each violation, or both.

---

**1.** 47 U.S.C. § 605(a) provides, in part: "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto."

"Satellite cable programming" is specifically defined as "video programming which is transmitted via satellite and which is primarily intended for the direct receipt by cable operators for their retransmission to cable subscribers...." 47 U.S.C. § 605(d)(1). Defendants' motion rests upon this definition.

## DISCUSSION

Defendants argue that given the statutory definition of satellite cable programming, § 605(e)(4) does not criminalize the conduct with which they are charged. Rather, according to them, the statute is directed at prohibiting, among other things, the modification of commercial descramblers, such as the VideoCipher IIC, which are used by cable operators to descramble television signals before retransmittal by wire to their cable subscribers. Defendants, in a conclusory manner, contend that this statute is ambiguous and thus, under the rule of lenity, must be interpreted in their favor.

Although this particular subsection of § 605 has been alluded to by two federal courts of appeals, *see United States v. Hux*, 940 F.2d 314 (8th Cir.1991); *United States v. McNutt*, 908 F.2d 561 (10th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 955, 112 L.Ed.2d 1043 (1991), no court has addressed the precise issue now presented or otherwise interpreted or applied this subsection. This court therefore has little guidance, besides certain well established rules of statutory construction, to aid it in resolving this question.

When faced with a question of statutory construction, the court begins by examining the plain language of the statute. This language controls unless the result reached thereby is clearly contrary to the express intent of Congress. *United States v. Raymer,* 876 F.2d 383, 389 (5th Cir.), *cert. denied,* 493 U.S. 870, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989). Further, the rule of lenity, which requires the strict construction of a criminal statute when it is ambiguous, *Raymer,* 876 F.2d at 391, "is not applied when it would conflict with 'the implied or expressed intent of Congress.'" *Id.* (quoting *Liparota v. United States,* 471

U.S. 419, 427, 105 S.Ct. 2084, 2089, 85 L.Ed.2d 434 (1985)). In other words,

the rule of lenity is not "an inexorable command to override common sense and evident statutory purpose.... Nor does it demand that a statute be given the 'narrowest meaning'; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers."

*Id.* (quoting *United Stated v. Brown,* 333 U.S. 18, 25–26, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948)).

As it existed before the 1988 amendments which added subsection (e)(4), section 605 provided that "[t]he importation, manufacture, sale, or distribution of equipment by any person with the intent of its use to assist in any activity prohibited by subsection (a) of this section shall be subject to penalties and remedies...." 47 U.S.C. § 605(d)(4) (pre–1988 amendment). Congress clearly intended this subsection "to leave undisturbed the case law that ha[d] developed confirming the broad reach of section 605 as a deterrent against piracy of protected communications." 1984 U.S.Code Cong. & Admin.News 4655, 4746.

There is absolutely no doubt that the conduct with which the instant defendants are charged was prohibited under § 605 as it existed before 1988. *See United States v. Herring,* 933 F.2d 932, 936–37 n. 19, 937 (11th Cir.1991). The question is thus whether, by amending § 605, Congress intended to decriminalize activity which had so clearly been found prohibited.

A review of the legislative history of § 605(e)(4) reveals the following under the heading, "Piracy of Satellite–Delivered Cable Programming":

In general, "piracy" refers to the decoding or decryption of scrambled programming without the authorization of the programmer nor payment for the programming. This theft of service is accomplished by altering legitimate decoders, such as the VideoCipher II, with illicit decoder technology. For example, legitimate chips which decode the service are cloned and placed in decoder boxes to which access is restricted.

\*     \*     \*     \*     \*     \*

Testimony at the [subcommittee] hearing, demonstrated that piracy has become an increasingly distressing problem to the satellite industry and seriously threatens to undermine the industry's survival.... [P]iracy most seriously threatens legitimate satellite dealers and satellite programmers, who otherwise would be receiving payment for their programming or descrambling devices.

According to testimony from one satellite dish dealer, "the dealer who sells a chipped [unauthorized] decoder sells it at an average profit of $1000 or more, and usually sells legitimate satellite equipment at his own cost, making all profits on the illegal chips. It is impossible for an honest dealer to compete against this type of price structure."

1988 U.S.Code Cong. & Admin.News 5577, 5642–43.

Under the heading "Piracy of Satellite Cable Programming," the history continues:

Section 5 of the Act amends Section 705 of the Communications Act pertaining to the piracy of satellite cable programming. The Committee's amendment is intended to deter piracy practices by (1) stiffening applicable civil and criminal penalties, (2) expanding standing to sue, and (3) making the manufacture, sale, modification, importation, exportation, sale or distribution of devices or equipment with knowledge that its primary purpose is to assist in unauthorized decryption of satellite cable programming expressly actionable as a criminal act. The Committee believes these changes are essential to preserve the longterm viability of the TVRO industry. It has been estimated that more than one-third of the one million Video-Cipher II descramblers (the industry's *de facto* standard) sold by manufacturer General Instrument have been compromised by black market decoding chips. Unquestionably, piracy is costing those who hold rights to satellite-delivered cable programming tens of millions of dollars in revenues.

The piracy problem is rampant both among commercial users of the VideoCi-

pher II (hotels, lounges, and other establishments) and among private home users. The depth of the problem is such that there has been a steady increase in the number of new prosecutions and civil suits brought against alleged "pirates." The Committee wants to give both prosecutors and civil plaintiffs the legal tools they need to bring piracy under control. The Committee commends and encourages inter-industry efforts to deal with piracy, and believes the new remedies and increased penalties adopted through this provision will contribute to these important efforts.

*Id.* at 5657–58.

The court finds that the intent of Congress in implementing § 605(e)(4) was to outlaw the practices with which these defendants are charged. The history specifically mentions the TVRO (Television Receive Only) industry, which refers to the backyard satellite dish consumer, not the CATV (cable television) industry, which refers to the transmittal of programming by satellite to cable operators; the VideoCipher II, the home satellite dish descrambler allegedly modified and distributed by defendants, not the VideoCipher IIC, the commercial descrambler; and the private home satellite dish consumer, not the cable operator. There is nothing in this history to indicate that Congress intended only to reach those individuals who modify commercial descramblers, which are used by cable operators to descramble satellite transmissions before retransmission to their subscribers. The fact that subsection (e)(4) kept intact the reference to prohibited acts under subsection (a) lends further support to this conclusion.

As the indictment not only states a crime against the laws of the United States but also meets the dictates of *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974), defendants' joint motion to dismiss is denied.