**AMERICAN CABLEVISION OF QUEENS, Plaintiff,**

v.

**James McGINN, Defendant.**

**No. CV–91–4535(JMA).**

United States District Court, E.D. New York.

March 23, 1993.

Daniel J. Lefkowitz, Jericho, NY, for plaintiff.

James McGinn, pro se.

## MEMO AND ORDER

AZRACK, United States Magistrate Judge:

This lawsuit was assigned to the Honorable Denis R. Hurley, United States District Judge. By Stipulation dated September 22, 1992, the parties gave their consent to have this case presided over by me for all purposes, pursuant to 28 U.S.C. § 636(c). I conducted a non-jury trial on March 9, 1993.

Immediately preceding trial, Mr. McGinn claimed that he was never properly served in this action. The Federal Rules of Civil Procedure are clear that a motion to dismiss for insufficiency of service of process pursuant to Rule 12(b)(5) is a waivable defense. *See* Federal Rule of Civil Procedure 12(h). Rule 12(h) states, in pertinent part, "A defense of insufficiency of process is waived ... if it is neither made by motion under this rule nor included in a responsive pleading or an amendment thereof permitted by Rule 15(a) to be made as a matter of course." Mr. McGinn did not raise insufficiency of process in the Answer which he submitted in this action. Nor did he submit any amended pleading raising the defense within the period permitted by Federal Rule of Civil Procedure 15(a). Furthermore, Mr. McGinn appeared at pre-trial conferences before me in this case, and actively participated in discovery with plaintiff. Thus, it is clear that Mr. McGinn waived the defense pursuant to Rule 12(h) and could not properly raise it at trial as a defense to this action. *See Datskow v. Teledyne, Inc., Continental Products Div.*, 899 F.2d 1298, 1303 (2d Cir.) (where by his conduct defendant waived defense of insufficiency of process by attending a conference with the magistrate and participating in scheduling discovery and motion practice, even though defense was raised in defendant's answer), *cert. denied*, 498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 116 (1990).

Therefore, based on the evidence that was presented at trial, what follows are my Findings of Fact, Conclusions of Law, and Order for the Entry of Judgment.

## FINDINGS OF FACT

1. First, I find that on June 26th and 27th, 1991, defendant James McGinn was a Subscriber of cable television services, pursuant to an agreement with plaintiff American Cablevision of Queens (now Time Warner Cable). Installation of three converter boxes took place in Mr. McGinn's home, 75–15 61st Street, Glendale, New York, in or about May 1988.

2. I find that Exhibits 2, 3, and 4, presented at trial, are the converter boxes that were installed in Mr. McGinn's home and were removed by American Cablevision service technicians on or about July 7, 1991. The serial numbers of these converter boxes are 0708196819, 0708455895, and 0708196782, respectively. Exhibits 2A, 3A, and 4A which are plaintiff's records pertaining to Mr. McGinn's cable television service, indicate that the boxes installed in his home bore the same serial numbers. No evidence was presented to refute that Exhibits 2, 3, and 4 were in fact the converter boxes in defendant's home.

3. Furthermore, I find that on June 27, 1991, Mr. McGinn was paying for and was entitled to receive Basic cable service, which does not include any premium channels.

4. One June 27, 1991, American Cablevision exercised an electronic countermeasure throughout its cable system. As testified at trial, the countermeasure is a software program designed to locate and disable cable converter boxes which are being operated with pirate firmware. In layman's terms, firmware is the computer chip that receives signals from the cable company's command computer.

5. The evidence indicates that subsequent to the use of the countermeasure, a call was received by American Cable from the McGinn household, complaining that at least one television was experiencing snow and no picture. An appointment was set for the service technicians to visit the McGinn household on July 7, 1991. The service technicians visited the house, retrieved the three converter boxes and replaced them with new ones.

6. After examining the converter boxes, I find that all three have physical attributes which the expert witnesses testified are indicia of tampering. All three boxes had security seals which were cut; all three had abnormally worn screw heads; and all three had pry marks on the outside of the box.

7. I find that the testimony of the experts produced by plaintiff establishes that the results of the tests performed on defendant's converter boxes showed that the converter boxes contained pirate firmware at the time of the June 27, 1991 exercise of the electronic countermeasure. The memory in the converter boxes contained certain data or information, such as the birthdate of the engineer who wrote the countermeasure program, and the Block Four program, which disabled the converter boxes. I fully credit the testimony of the experts, which established that there is no way for the memory to hold this information unless the converter held pirate firmware when the countermeasure was used. Absolutely no evidence was presented to suggest otherwise.

8. While Mr. McGinn claimed that only one converter box failed to work after June 27, 1991, I find that the documentation of the test results firmly establishes that all three converter boxes contained pirate firmware on June 27, 1991. Mr. McGinn could not offer an explanation of why anyone at American Cablevision would have a motive to tamper with his converter boxes. Thus, I find that all three boxes contained the pirate chip.

9. I recognize that when the converter boxes were examined by American Cablevision personnel, none of the boxes contained pirate firmware. Nevertheless, I credit the testimony of the experts which explained that most subscribers using pirate firmware would replace the firmware with the legitimate chip before returning the boxes to the company. In fact, many of the boxes were returned with legitimate chips installed backwards. The testimony established that the boxes would not have been operable with the chips installed backwards; therefore, it is reasonable to infer that the backwards chips were installed some time after the countermeasure exercise and before the return of the boxes to American Cablevision. Thus, the fact that Mr. McGinn's boxes contained legitimate chips when inspected by American Cablevision does not establish that the legitimate chips were in place at the time of the countermeasure. Rather, as I have indicated, the bulk of the evidence establishes that the converter boxes contained pirate firmware when the countermeasure was used.

10. I also find that the converter boxes were kept in a secured room in the American Cable warehouse from the date that they were taken from Mr. McGinn's home until they were tested, and then after they were tested, until trial. There is no evidence to suggest that the boxes are not in the condition they were in when removed from Mr. McGinn's home.

## CONCLUSIONS OF LAW

1. Plaintiff has claimed that defendant is liable for damages under two statutes: 47 U.S.C. § 553, and 47 U.S.C. § 605. Both sections prohibit the interception of cable television services. *See Cablevision Systems Corp v. Maxie's North Shore Deli*

*Corp.,* No. 88–CV–2834(ASC), 1991 WL 58350 (E.D.N.Y. March 29, 1991); *Cablevision Systems Corp. v. DePalma,* No. 87–CV–3528(JLC), 1989 WL 8165 (E.D.N.Y. Jan. 17, 1989). Plaintiff, however, may recover under only one of the two sections. *Maxie's North Shore Deli Corp.,* No. 88–CV–2834(ASC), 1991 WL 58350 (E.D.N.Y. March 29, 1991). Although both sections may be applicable, I will consider defendant's liability under Section 553, because that Section specifically addresses itself to the interception of cable television services, and because Section 605 typically is applied in cases where the defendant sold devices and equipment which would permit unauthorized access to the cable channels, or where defendant intercepted the signal in a place of business where certain events, such as boxing matches, would be shown to the public. *See, e.g., Maxie's North Shore Deli,* No. 88–CV–2834(ASC), 1991 WL 58350 (E.D.N.Y. March 29, 1991); *DePalma,* No. 87–CV–3528(JLC), 1989 WL 8165 (E.D.N.Y. Jan. 17, 1989).

▪ 2. I conclude that based upon my factual findings defendant James McGinn has violated Title 47 United States Code Section 553, which reads in pertinent part, "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." He has violated this Section by operating the cable converter boxes with pirate firmware installed, thereby allowing him to intercept and receive premium channels for which he was not an authorized subscriber and for which he did not pay American Cablevision.

3. Pursuant to Section 553(c)(2)(A), I hereby order that defendant James McGinn is permanently enjoined from intercepting or receiving unauthorized cable television services, by any manner or method.

▪ 4. Further, Section 553(c)(3)(A)(ii) permits an award of statutory damages no less than $250.00 and no greater than $10,-000.00. With that parameter in mind, I hold that defendant is liable for damages in the amount of $250.00 per converter box, per month that unauthorized service was re-ceived. Thus, pursuant to Sections 553(c)(2)(B) and 553(c)(3)(A)(ii), the total amount of damages, for which I hold defendant James McGinn liable to plaintiff, is $8,250.00.

▪ 5. Plaintiffs have suggested that the court consider imposing higher damages on the basis that Mr. McGinn's violation of Section 553 was willful and for purposes of commercial advantage or private financial gain, pursuant to 47 U.S.C. § 553(c)(3)(A). In one sense it is true that an individual who intercepts the cable signal with an unauthorized device is reaping a financial gain in that he is receiving a service for which he has not paid. Nevertheless, it is obvious that Congress would have no reason to enact the two separate sections regarding damages (Sections 553(c)(3)(A) and 553(c)(3)(B)), if by its nature every violation of Section 553 were for purposes of private financial gain. Like the cases that base violations on Section 605, the cases that have held that the interception was for financial gain typically have involved defendants who sell devices and equipment which would permit unauthorized access to the cable channels, or defendants who intercepted the signal in a place of business where certain events are shown to the public. *See, e.g., Maxie's North Shore Deli,* No. 88–CV–2834(ASC), 1991 WL 58350 (E.D.N.Y. March 29, 1991); *DePalma,* No. 87–CV–3528(JLC), 1989 WL 8165 (E.D.N.Y. Jan. 17, 1989). Thus, I find that Mr. McGinn's violation was not for purposes of financial gain, as those words are used in the statute.

## ORDER FOR ENTRY OF JUDGMENT

Now, for the reasons set forth above, is hereby Ordered:

1. That judgment be entered in favor of plaintiff American Cablevision of Queens, Inc., now Time Warner Cable, Inc., in the amount of $8,250.00, plus reasonable attorney's fees, pursuant to Section 553(c)(2)(C), to be determined by this Court at a later date; and

2. That a permanent injunction be entered against defendant James McGinn, prohibiting him from intercepting or receiving

unauthorized cable television services, by any manner or method; and

3. That plaintiff submit proper and complete documentation of attorney's fees no later than March 31, 1993, for determination of the amount of the attorney's fees award.

SO ORDERED.

Michael Considine, Asst. U.S. Atty., Valerie Caproni, Asst. U.S. Atty., Ronald Fischetti, Fischetti and Russo, New York City, for defendant Robert Donofrio.

Paul Lemole, Staten Island, NY, for defendant Joseph Legrano.

Frank Lopez, New York City, for defendant Joseph Sangiorgio.

Benjamin Brafman, New York City, for defendant Lawrence Micciolo.

Joel Cohen, New York City, for defendant Robert Montano.

Martin Geduldig, Hicksville, NY, for defendant Richard Brady.

Paul Greenfield, New York City, for defendant Michael DeMatteo.

Lawrence Stern, New York City, for defendant Anthony Sayegh.

Stuart Rubin, Brooklyn, NY, for defendant Frank Pontillo.

David Breitbart, New York City, for defendant John Pate.