CABLEVISION SYSTEMS NEW YORK CITY CORPORATION, Plaintiff,

v.

Yury LOKSHIN, Defendant.

No. 96 CV 0555(SJ).

United States District Court, E.D. New York.

July 16, 1997.

Daniel J. Lefkowitz, Jericho, NY by James T. Ausili, for Plaintiff.

Yury Lokshin, Brooklyn, NY, pro se.

### ORDER

JOHNSON, District Judge.

■ After reviewing the record, and having received no objections from the parties, the Court hereby affirms and adopts in part the Report and Recommendation issued by Magistrate Judge Go on May 29, 1997 in the above-referenced matter. The Court agrees with the findings and conclusions set forth in the Report and Recommendation, and in particular, with Magistrate Judge Go's finding under 47 U.S.C. § 553(c)(3)(B) that defendant's conduct in intercepting and receiving plaintiff's private cable telecommunications signals was willful and for purposes of private financial gain. Report and Recommendation at 114–115.

■ Although some courts have found that individual defendants who use stolen cable services solely for their own benefit and at their own residences are not subject to enhanced damages under 47 U.S.C. § 553(c)(3)(B), *see, e.g., Time Warner Cable of New York v. Rivera,* No. 94 Civ. 2339, 1995 WL 362429, at *4 (E.D.N.Y. June 8, 1995); *American Cablevision of Queens v. McGinn,* 817 F.Supp. 317, 320 (E.D.N.Y. 1993), the Court agrees with Magistrate Judge Go's statutory analysis in support of finding that such conduct may be interpreted as being for the purpose of private financial gain. *See* Report and Recommendation at 114–115.

■ In exercising its discretion to award enhanced damages, the Court notes the particular circumstance in this case that a maximum award of statutory damages, $10,000.00, approximates the actual value of free services that the defendant may have received over six years. Because Section 553(a)(1) was specifically enacted to address the "major problem" of theft of cable services, *see Cablevision Systems Corp. v. Maxie's North Shore Deli Corp.,* No. 88 Civ. 2834, 1991 WL 58350 at *1 (E.D.N.Y. Mar.20, 1991) (quoting H.R.Rep. No. 98–934, at 83 (1984), *reprinted*

*in* 1984 U.S.C.C.A.N. 4655, 4720), it seems especially appropriate in this case to go beyond an award of maximum statutory damages in order to deter the defendant and others from future theft of cable services. The Court, however, declines to adopt Magistrate Judge Go's recommendation that enhanced damages of $10,000.00 be imposed, and instead awards plaintiff enhanced damages in the amount of $1,500.00.

Accordingly, it is hereby

ORDERED that plaintiff be awarded:

(1) $10,000.00 in statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii); (2) $1,500.00 enhanced damages pursuant to 47 U.S.C. § 553(c)(3)(B); (3) $1,503.06 in attorneys' fees; and (4) $20.00 in costs. The Clerk of the Court is directed to enter judgment in this case against defendant Yury Lokshin in the amount of $13,023.06, and to close this case.

SO ORDERED.

## REPORT AND RECOMMENDATION

GO, United States Magistrate Judge.

Plaintiff, Cablevision Systems New York City Corporation (hereinafter referred to as "Cablevision" or "plaintiff"), brought this action against the twenty named defendants [1] alleging violations of Title 47 of the United States Code. In its complaint, plaintiff alleges that defendants intercepted and received plaintiff's private cable telecommunications signals without plaintiff's authorization through the use of a compatible bootleg cable television decoder, in violation of sections 553(a)(1) and 605(a) of Title 47.

On July 24, 1996, the Honorable Sterling Johnson granted plaintiff's request for entry of default against defendant Yury Lokshin ("Lokshin"), who failed to file an answer or otherwise respond to the complaint, but referred determination of the amount of the judgment to me for report and recommenda-

tion. Judge Johnson also enjoined Lokshin from continuing to use the decoder to intercept plaintiff's private cable telecommunications signals.

For the following reasons, I respectfully recommend that plaintiff be awarded statutory damages against defendant Yury Lokshin pursuant to 47 U.S.C. § 553(c)(3) in the amount of $20,000 and attorneys' fees and costs of $1,543.06.

## FINDINGS OF FACT

The facts pertinent to determination of this motion are set forth in the Complaint; the November 18, 1996 affidavit of Harry Maxwell, the former Director of Security for plaintiff ("Maxwell Aff."); the November 22, 1996 affidavit of James T. Ausili, Esq., plaintiff's counsel; the February 19, 1996 affidavit of service ("Service Aff."); and the September 11, 1996 certificate of default by the clerk ("Certificate of Default"). Lokshin did not file any opposition to plaintiff's application nor respond in any way during the pendency of either this action both before and after being served notice of plaintiff's motion for default judgment. *See* Service Aff. My findings of fact are as follows:

Cablevision is a cable television operator which has been awarded franchises by the City of New York to construct, operate and maintain cable television systems in parts of Kings County, New York. It offers cable television programming services to subscribers at different monthly charges depending upon the level of services requested. Complaint at ¶ 6; Maxwell Aff. at ¶ 2. "Basic" service allows the subscriber to receive plaintiff's programming services with the exception of premium and Pay–Per–View programming services. "Optimum" service (formerly "Rainbow") service includes basic and all of plaintiff's premium programming ser-

---

**1.** Plaintiff subsequently entered into partial consent judgments with eight defendants and voluntarily discontinued this action against nine other defendants. Claims are pending against Derrick Leid and Richard Sandler, the two remaining defendants who have answered. Discovery is expected to be completed by September 1997, if the claims are not settled.

vices with the exception of Showtime, Cinemax, and Pay–Per–View programming. "Optimum Gold" allows a subscriber to receive "Optimum" level of service plus either Cinemax or Showtime, while "Optimum Preferred" includes "Optimum" level of service plus both Cinemax and Showtime. Maxwell Aff. at ¶¶ 4–5. Cablevision also offers Pay–Per–View Programs throughout the day which typically range between $4.00 and $39.99 per selection. *Id.* at ¶ 18.

Cablevision transmits the signals for all its cable television services to subscribers' homes through a network of cable wiring and equipment (the "System"). In order to protect its programming services against unauthorized reception, Cablevision encodes or "scrambles" the signals and provides each subscriber with a device known as a "converter" to enable subscribers to receive programs on their television sets. Complaint at ¶¶ 10–11; Maxwell Aff. at ¶ 11. Each converter contains a "descrambler" or "decoder" to decode scrambled service so that each subscriber receives only the level of programming services he or she selects and purchases. Complaint at ¶ 9. Programming services not purchased remain scrambled and unviewable on the subscriber's television set.

The agreements between Cablevision and its subscribers forbid unauthorized tampering with Cablevision's equipment. Cablevision however, ordinarily cannot detect use of pirate descramblers without a subscriber's affirmative permission to conduct an on-site inspection. Maxwell Aff. at ¶ 9.

In 1991, the Federal Bureau of Investigations executed a search warrant on the Offices of Global Cable Network ("Global") and obtained its sales records. *Id.* at ¶ 14. After Global and its principal, Eric Neplokh, were indicted and pleaded guilty to violations of 47 U.S.C. § 302A for the sale of cable television devices in violation of FCC regulations, copies of Global's business records were forwarded to cable operators throughout the United States, including Cablevision. *Id.* at ¶ 15.

Global's records indicated that on January 16, 1991, Lokshin purchased an unauthorized two-piece cable television decoding device. Maxwell Aff. at ¶ 16. Two weeks after the purchase of the pirate descrambling device from Global, Lokshin downgraded his cable service to "Basic" service, which at the time cost $9.95 per month. *Id.* at ¶ 17.

Lokshin previously received the "Rainbow" level of service, which allowed him to receive all of plaintiff's premium programming services with the exception of Showtime, Cinemax, and Pay–Per–View programming, at a monthly average charge prior to that time of $46.95. *Id.* Lokshin ordered an average of ten Pay–Per–View events per month between December 21, 1989 and December 28, 1990. *Id.*

Lokshin still subscribes for only "Basic" service and pays $13.95 per month. *Id.* at ¶ 17. Since 1991, Lokshin has been receiving plaintiff's premium and Pay–Per–View services without authorization, or payment. The price difference between the paid for basic service and the unauthorized premium service that Lokshin currently receives is valued at approximately $48.00 per month. If all Pay–Per–View programs were selected, the monthly cost would be hundreds of dollars. *Id.* at ¶ 18.

## DISCUSSION

### I. *Legal Standards Governing Default*

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. *Greyhound Exhibitgroup Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.), *cert. denied,* 506 U.S. 1080, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. *Id.* at 69–70. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Greyhound,* 973 F.2d at 159.

The court must ensure that there is a basis for the damages specified in a default judgment. In determining damages not suscepti-

ble to simple mathematical calculation, Fed. R.Civ.P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir.), *cert. denied,* 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992) (quoting *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir.1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain*, 653 F.2d at 65 (citing *Trans World Airlines*, 308 F.Supp. at 683).

## II. *Determination of Damages*

Both sections 553 and 605 of Title 47 prohibit the unauthorized interception and reception of cable programming. Section 553(a)(1) specifies that:

> No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

Section 605(a) provides that:

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

In contrast to section 553, which by its statutory language applies only to transmissions via cable systems, section 605(a) applies to "the interception of cable-borne, as well as over-the-air, pay television" where cable-borne transmissions originate as satellite transmissions. *International Cablevision, Inc. d/b/a Adelphia Cable v. John Sykes and Marvin Noel*, 75 F.3d 123, 130 (2nd Cir.1996) ("*Sykes*"). Thus, when pay television programming is transmitted over both cable and satellite mediums, both statutes apply, since they are not mutually exclusive despite their overlap. *Id.*

Plaintiff's submissions establish that defendant violated both sections 553 and 605 of Title 47 by intercepting and receiving plaintiff's cable signals without authorization.

Complaint at ¶¶ 1, 18, 19; Maxwell Aff. at ¶ 18. Plaintiff is a cable operator and receives the signals to all of its premium and Pay–Per–View programming channels by transmissions via orbiting satellites from the programming producers. It retransmits the signals to its premium and Pay–Per–View subscribers. Maxwell Aff. at ¶ 10. In order to protect against unauthorized reception, plaintiff scrambles its transmissions and enables subscribers to view only those broadcasts for which they have paid. Complaint at ¶ 11. Lokshin purchased and installed a "pirate" device to intercept all of plaintiff's transmissions without authorization and payment. Complaint at ¶¶ 1, 18, 19.

Both sections 553 and 605 allow a plaintiff to recover actual or statutory damages. Section 553(c)(3)(A)(ii) provides statutory damages of $250 to $10,000 for "all violations" while section 605(e)(3)(C)(i)(II) authorizes statutory damages of $1,000 to $10,000 for "each violation."

Section 605(e)(3)(C)(ii) also vests the court with the discretion to increase the award of damages, whether actual or statutory, where "the court finds that the violation was committed willfully and for purposes of direct or indirect financial gain." The court is authorized to award enhanced damages of up to $100,000 for each violation. However, section 605(d)(5) excludes from the definition of "private financial gain" any unauthorized private use at a residence. On the other hand, section 553(c)(3)(B) permits award of enhanced damages of up to $50,000 for willful conduct for purpose of commercial advantage or private financial gain, without restricting the definition of "private financial gain."

■ Plaintiff seeks statutory, rather than actual, damages under section 605(e)(3)(C)(i) for each purported violation of that statute. Statutory damages are appropriate because of the difficulty in determining the extent of Lokshin's unauthorized use with any degree of accuracy.

■ Plaintiff further argues that the unauthorized receipt of programming during each monthly billing period and for each Pay–Per–View program constitutes a separate viola-

tion. Under plaintiff's view of section 605, Lokshin has violated the statute over seventy times for each of the monthly billing periods since January, 1991 when he installed the "pirate" decoder. However, nothing in the language of section 605 supports plaintiff's contention that the continued unauthorized receipt by a subscriber constitutes more than one violation. Although section 605(e)(3)(C)(i)(II) refers to "*each* violation of subsection (a)," the pertinent portion of § 605(a) states only that "[n]o person not being entitled thereto shall receive or assist in receiving" certain radio communications. There is no provision indicating that the unauthorized reception of signals would constitute more than one violation if continued beyond a certain time period, nor any mention of billing periods. In contrast, section 605(e)(4), which governs violations relating to the distribution of unauthorized decoders, specifies that "each such device shall be deemed a separate violation." 47 U.S.C. § 605(e)(4); *see also* § 553(b)(3).

Since courts should follow the plain language of a statute in determining its scope, *see generally, United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), I find that defendant Lokshin's conduct here amounts to only one violation of section 605 or 553.[2] Fashioning multiple violations out of the continued unauthorized use by Lokshin here not only lacks statutory support, but could lead to inconsistent results since the enumeration of violations could change depending on the billing cycle of the cable service provider involved.

Both sections 553(c)(3)(A)(ii) and 605(e)(3)(i)(II) authorize the court to award statutory damages "as the court considers just." 47 U.S.C. §§ 553(c)(3)(A)(ii) and 605(e)(3)(i)(II). In exercising its discretion to award damages, this court should consider both the nature of the violation in light of the statutory scheme involved, as well as the particular circumstances concerning the defendant's actions in this case in determining damages. In addition, given the fact that Congress expressly lessened the burden imposed on plaintiffs in proving actual damages,[3] it is appropriate that courts should likewise not be stringent in awarding statutory damages to insure that purposes of both statutes are achieved.

Plaintiff estimates in the Maxwell Aff. at ¶ 18 that Lokshin has received approximately $9,000.00, worth of unauthorized cable services. Based on the current $48.00 difference in cost between premium and basic services and the current costs of Pay Per View programs, $9,000.00 is reasonable estimate of the value of programming that Lokshin has received without proper payment.[4] This amount may actually be an underestimate since Lokshin is probably still using the "pirate decoder" and may have seen even more pay-per-view programming than the reasonable number of programs upon which the estimate is based.

Because of the difficulty in detecting unlawful interception, the widespread problem of piracy,[5] the projected loss to plaintiff, and the need for an award sufficient to deter future piracy by defendants and others, I recommend that the maximum amount of $10,000 in basic damages be awarded under section 553(c)(3)(A)(ii). *See Time Warner Cable of New York v. Rivera*, 1995 WL 362429, at *5 (E.D.N.Y.1995) ($1,500.00 award for 10 months of unauthorized use). Although damages could be awarded under either section 553(c) or 605(e), I recommend an award only under section 553 because an award of damages under this one statute would be sufficient to compensate plaintiff as discussed below.

---

**2.** Since the basic statutory damages available under section 553(c)(3)(A)(ii) apply "for all violations involved in the action," the issue of multiple violations does not arise.

**3.** Both sections 553(c)(3)(A)(i) and 605(e)(3)(C)(i)(I) require that an aggrieved party prove only the gross revenues of the violators.

**4.** For example, the aggregate cost of seventy-two months of unauthorized premium services at

$48.00 per month, sixteen Pay–Per–View movies per month at an average cost of $5.00 per selection and four additional Pay–Per–View selections per month at an average cost of $11.25 per month would exceed $9,000.00.

**5.** *See* Maxwell Aff. at ¶ 9; *see also* legislative history quoted in *Sykes*, 75 F.3d at 132.

■■ For essentially the same reasons, I also recommend that enhanced statutory damages be awarded under section 553(c)(3)(B) because of the defendant's willful conduct for "private financial gain." Willfulness has been defined by the Supreme Court as "disregard for the governing statute and an indifference for its requirements." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 126–27, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985). This standard is also applicable to cases involving theft of cable television programs. *ON/TV of Chicago v. Julien,* 763 F.2d 839, 844 (7th Cir.1985); *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 851 (11th Cir.1990).

Lokshin's conduct undoubtedly was willful since he took measures to purchase and install an unauthorized descrambler, notwithstanding a prohibition in his subscription agreement with plaintiff. In light of the fact Congress and most states have seen fit to impose both criminal and civil liability on persons who misappropriate such communications signals, and the wide availability of cable and satellite services for a fee, most persons cannot now seriously argue that they did not understand the significance of using an unauthorized descrambling device. Furthermore, Lokshin's default itself could further be viewed as evidence of willfulness, *see Fallaci v. New Gazette Literary Corp.,* 568 F.Supp. 1172, 1173 (S.D.N.Y.1983), particularly since there is no evidence presented by him that he has actually discontinued use.

The record also supports the reasonable inference that defendant Lokshin derived private financial gain from his conduct. Immediately after purchasing the "pirate" decoder, he changed his level of cable service and ceased to receive Pay–Per–View programs, thereby significantly reducing his monthly cable charges.

In reaching this recommendation that this Court award enhanced damages pursuant to section 553(c)(3)(B) for Lokshin's willful conduct for "purposes of commercial advantage or private financial gain," I reject the reasoning and contrary result of the court in *American Cablevision of Queens v. McGinn,* 817 F.Supp. 317, 320 (E.D.N.Y.1993). Because of its concern that a broader definition of "private financial gain" would subsume *all* conduct, the court in *McGinn* confined the award of enhanced damages under section 553(c)(3)(B) to the limited circumstances where a defendant either sold unauthorized decoder devices or intercepted signals for public showing. *Id.* In my view, such a restricted interpretation is inconsistent with the plain meaning of "private financial gain," since a savings in cable charges was and continues to be a private financial benefit realized by Lokshin.

Particularly instructive is the fact that Congress, in seeking to limit the availability of enhanced damages under section 605(e)(3)(C)(ii), expressly limited the definition of "private financial gain" to exclude private viewing from its scope in providing that:

> (5) the term "private financial gain" shall not include the gain resulting to any individual for the private use in such individual's dwelling unit of any programming for which the individual has not obtained authorization for that use; ...

47 U.S.C. § 605(d). Although both sections 553(c)(3)(B) and 605(e)(1)(C)(ii) contain almost identical language governing the award of enhanced damages, section 553 does not contain any limiting definition of "private financial gain" comparable to section 605(d)(5). In the absence of such a qualification, the plain statutory language of section 553(c)(3)(B) regarding damages for willful conduct resulting in "private financial gain" clearly authorizes the award of enhanced damages in this case.

Moreover, since section 553(a) covers both the actual unauthorized interception of cable services and assistance in such interception, a person may conceivably violate that section without deriving private financial gain. For example, no pecuniary gain would be involved where a person assists in installation of an unauthorized device without compensation or where a manufacturer attempts to distribute unauthorized devices and is thwarted before beginning sales. Whether or not most defendants could be found to have engaged in willful conduct, a straightforward interpretation of section 553(c)(3)(B) would not result in excessive awards since

the imposition of enhanced damages is tempered by the discretion that courts have not to award such damages.

However, an award of damages beyond the maximum basic damages of $10,000.00 is clearly warranted in this case. Because the theft of cable services has continued for over six years, the reasonable estimated cost of the services that Lokshin received without authorization approximates the maximum basic damages. In order to deter defendant and others from future theft, an award of only basic damages would be a windfall for Lokshin, who would merely be required to pay many years later the actual cost of services received. Therefore, I recommend that plaintiff be awarded enhanced damages under section 553(c)(3) of $10,000.00, for a total award of statutory damages of $20,000.00.

## III.  *Attorneys' Fees And Costs*

Title 47 U.S.C. § 605(e)(3)(B)(iii) mandates that reasonable attorneys' fees and costs be awarded to a prevailing aggrieved party. *Sykes,* 997 F.2d at 1009. The standard method for determining the amount of reasonable attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40; *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058–59 (2d Cir. 1989), *cert. denied,* 496 U.S. 905, 110 S.Ct. 2587, 110 L.Ed.2d 268 (1990).

The reasonable hourly rates should be based on the prevailing marketplace rates "in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3,* 34 F.3d 1148, 1159 (2d Cir.1994). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. *Chambless,* 885 F.2d at 1059. A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records. *New York State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1147–48 (2d Cir.1983).

Plaintiff seeks compensation at rates ranging from $75.00 to $125.00. Plaintiff also seeks costs of $20.00 for service of process on the defaulting defendant. I find the rates sought to be reasonable based on my knowledge of prevailing rates in the area and note that courts in both this district and the Southern District of New York have readily approved substantially higher rates for attorneys with comparable experience. After carefully reviewing plaintiff's itemized billing statement contained in Ausili's Aff., I find that plaintiff has provided sufficient information in Exhibit C (the "Time Sheets") to explain the time spent by each attorney, and that the amount claimed is generally reasonable and appropriate. Although the attorneys' time sheets reflect all work done in connection with the entire lawsuit, plaintiff has claimed attorney's fees only pertaining to work performed with regard to Lokshin. Plaintiff also specified costs incurred only pertaining to Lokshin.

Thus, I recommend that this court award the plaintiff attorney's fees and costs in the sum of $1,543.06 for the time and costs claimed by plaintiff set forth in Ausili's Aff. at ¶¶ 6–7 as follows:

#### RECOVERABLE ATTORNEY'S FEES

| Date | Attorney | Time | Hourly Rate | Amount |
|---|---|---|---|---|
| 7/16/96–11/8/96 | WBJ | 1.1 | $125.00 | $  137.50 |
| 3/15/95–2/13/96 | WRL | 0.3875 | $ 75.00 | $  29.06 |
| 10/23/96–11/15/96 | JTA | 12.15 | $110.00 | $1,336.50 |

| Total Fees: | $1,523.06 |
|---|---|

#### RECOVERABLE COSTS

| Service of Process on the Defaulting Defendant | $  20.00 |
|---|---|
| TOTAL RECOVERABLE ATTORNEY'S FEES AND COST: | $1,543.06 |

### CONCLUSION

For the foregoing reasons, I recommend that the court award plaintiff, Cablevision Systems New York City Corporation, judgment against defendant Yury Lokshin in the total amount of $21,543.06 for the following: (a) basic of $10,000.00 damages under section 553(c)(3)(A)(ii); (b) enhanced damages of $10,000 under section 553(c)(3)(B); (c)$1,523.06 in attorneys' fees; and (d) $20.00 in costs.

Copies of this report and recommendation have been mailed to the parties on this date. Any objections to this Report and Recommendation must be filed with the Clerk of

the Court, with a copy to the undersigned and to the Honorable Sterling Johnson Jr. by June 27, 1997. Failure to file objections within the specified time waives the right to appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(b).

SO ORDERED.

May 29, 1997.