**KINGVISION PAY–PER–VIEW,
LTD., Plaintiff,**

v.

**Susan BACKMAN, et al., Defendants.
No. C99–4105 TEH.**

United States District Court,
N.D. California.

June 30, 2000.

Thomas P. Riley, San Francisco, CA, for plaintiff.

Fred M. Marker, San Leandro, CA, pro se.

### ORDER GRANTING DEFAULT JUDGMENT

HENDERSON, District Judge.

*BACKGROUND*

On September 3, 1999, Kingvision Pay–Per–View ("Plaintiff") filed suit against Defendant Fred M. Marker ("Defendant"), individually and d/b/a Blue Bird Cocktails for the unlawful interception and broadcast of the *Mike Tyson v. Bruce Seldon Championship Boxing Program* ("the Program") on September 7, 1996, for which Plaintiff had distribution rights. On October 26, 1999, Plaintiff filed its first amended complaint against the Defendant. Plaintiff alleges that Defendant violated 47 U.S.C. § 605, 47 U.S.C. § 553, 17 U.S.C. § 501, and California Business and Professions Code § 17040 and § 17200. Plaintiff also alleges that Defendant is liable for conversion and breach of implied contract. Plaintiff seeks statutory damages under 47 U.S.C. § 605 and § 553, and compensatory damages for all other claims. Plaintiff also

seeks attorney's fees and costs as allowed under 47 U.S.C. § 605 and § 553.

Defendant was properly served with the amended complaint on December 8, 1999 and failed to respond within the time prescribed by the Federal Rules of Civil Procedure. Consequently, pursuant to F.R.C.P. 55(a), default was entered against Defendant on January 25, 2000. Plaintiff filed an application for default judgement on March 23, 2000 with supporting declarations.

*LEGAL STANDARD*

■ For a default judgement, well-pleaded factual allegations are sufficient to establish a defendant's liability. However, the allegations of the complaint regarding the amount of damages suffered are not controlling. *See Dundee Cement Co. v. Howard Pipe & Concrete Products*, 722 F.2d 1319, 1323–1324 (7th Cir.1983); *Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir.1977). Therefore, while Plaintiff asks for damages in the amount of $120,000 against the Defendant, such a request is not dispositive.

*DISCUSSION*

A. Statutory Damages

■ Based on the pleadings, Defendant is liable for conduct that violates both 47 U.S.C. § 605 and § 553. Plaintiff requests separate awards for each statutory provision violated, even though the multiple violations stem from the same conduct. While a few courts have multiplied awards when liability exists under both provisions, the majority of courts—including most courts in the Ninth Circuit—have imposed damages "pursuant to § 605 alone rather than cumulatively." *See Kingvision Pay–Per–View v. Arias*, 2000 WL 20973, at *2 n. 7 (N.D.Cal. Jan.7, 2000) (citing *Joe Hand Promotions, Inc. v. Pete*, 1999 WL 638215, at *1 (N.D.Cal. Aug.17, 1999)). *See also International Cablevision, Inc. v. Sykes*, 75 F.3d 123, 129 (2d Cir.1996) (concluding that damages should be imposed under § 605 instead of the lesser damages available under § 553). *But see Spencer Promotions, Inc. v. 5th Quarter Enterprises*, 1996 WL 438789, at *7 (N.D.Cal. Feb.21, 1996) (awarding statutory damages under both § 605 and § 553). In fact this very court has previously declined to award additional damages under § 553 when a defendant has violated both § 605 and § 553. *See Joe Hand Promotions, Inc. v. De Miguel*, No. C99–02171, at *3 n. 2 (N.D.Cal. Feb. 9, 2000). Since there are no unusual or particularly egregious circumstances that would justify a departure from these precedents, the Court will award damages only under 47 U.S.C. § 605.[1]

---

1. Currently, there is no judicial consensus on the issue of which statutory provision applies and under what circumstances. Some courts contend that § 605 and § 553 are mutually exclusive, applying to discrete violations that can be distinguished. *See, e.g., United States v. Norris*, 34 F.3d 530 (7th Cir.1994) (disagreeing with the contention that "§ 553(a) and § 605(a) are overlapping statutes" and applying the former provision to cable transmissions and the latter to non-cable radio transmissions); *Kingvision Pay–Per–View v. Owens*, 982 F.Supp. 803, 805 (D.Kan.1997) ("Courts generally have held that section 605 applies to interception or receipt of cable television signals 'before they begin to travel through the cable,' while section 553 applies to the 'interception or receipt of cable service transmissions at the point in the system that the transmission is carried by coaxial cable or wire.' ") (citing *TCI Cablevision of New England v. Pier House Inn, Inc.*, 930 F.Supp. 727, 735 (D.R.I.1996)).

Other courts see considerable overlap between the two provisions. *See, e.g., Cablevision Systems New York City Corp. v. Lokshin*, 980 F.Supp. 107, 112 (E.D.N.Y.1997) ("Thus, when pay television programming is transmitted over both cable and satellite mediums, both statutes apply, since they are not mutually exclusive despite their overlap."). Even among courts willing to find simultaneous violations of both § 605 and 553, there is considerable disagreement over damages. Some courts will grant two separate awards, one for each provision violated. *See, e.g., Don King Productions/Kingvision v. Maldonado*, 1998 WL 879683, at *1 (N.D.Cal. Dec.11, 1998). Other courts, although they find that multiple provisions have been violated, will only grant damages under one provision. *See, e.g., Joe Hand Promotions, Inc. v. Pete*, 1999 WL 638215, at *1 (awarding damages under § 605).

For each violation of section 605, Plaintiff is entitled to damages of $1,000 to $10,000, the exact amount to be determined by what the Court "considers just." *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). In addition, the Court has discretion to increase the award of damages for each violation in an amount up to $100,000 when a "violation was committed willfully and for purposes of direct or indirect commercial advantage or financial gain." *See* 47 U.S.C. § 605(e)(3)(C)(ii).

In asking for enhanced statutory damages, Plaintiff contends that its allegations—that the Program was willfully displayed for direct or indirect commercial advantage or private financial gain—should be deemed admitted under the rules governing default. *See Danning v. Lavine,* 572 F.2d 1386 (9th Cir.1978). However, since Plaintiff's allegations of willfulness bear directly on the question of damages, the mere assertion that Defendant acted willfully is insufficient to justify enhanced damages. *See Geddes v. United Financial Group,* 559 F.2d at 560.

█ In this case, although the Program was broadcast in a commercial setting, there is no evidence of significant "commercial advantage or private financial gain." Plaintiff has not alleged that Defendant engaged in promotional advertising for the Program or charged a premium for food and drinks. There was no cover charge to enter the establishment.[2] And as there were only 16 patrons in Defendant's establishment at the time of the

violation, any commercial advantage or private financial gain was minimal at best.

Moreover, any claims of future loss of business are purely speculative. Plaintiff makes a tenuous slippery slope claim that customers will migrate to establishments that offer pirated Pay–Per–View Programs at no cover charge, and that current establishments that pay for such Programs will be encouraged to cancel their subscriptions and engage in piracy just to compete. But there is no evidence that these 16 patrons had migrated from another establishment. Nor does Plaintiff allege that the 16 patrons were at Defendant's establishment solely to watch the pirated Program. Any fear that Defendant's conduct actually wooed customers away from establishments that paid for the Program seems unsubstantiated.

In the past, despite widespread knowledge about illegal cable reception, isolated violations do not seem to have led to the proliferating piracy and decreasing cable subscriptions portended by Plaintiff. Undoubtedly, the flood of cable piracy has been dammed by the diligent efforts of distributors such as Plaintiff to investigate and prosecute illegal activity. And courts should adequately compensate distributors' losses and punish any violators. But the principle of proportionality governs here: distributors should not be overcompensated and statutory awards should be proportional to the violation. For example, a higher statutory award may be justified in cases where defendants are repeat offend-

---

Nonetheless, despite some disagreement in this area of law, where defendants have *defaulted* and courts have found liability under *both* § 605 and § 553, damages are usually awarded only under § 605. *See, e.g., Joe Hand Promotions, Inc. v. De Miguel,* No. C99–02171, at *3 n. 2; *Kingvision v. Arias,* 2000 WL 20973, at *2 n. 7; *Joe Hand Promotions, Inc. v. Pete,* 1999 WL 638215, at *1. Therefore, the Court need not resolve the larger dispute over the statutory framework of the Federal Communications Act in today's ruling.

**2.** Plaintiff contends that the Defendant, by not assessing a cover charge, received a

*greater* commercial advantage over paying establishments and actually posed a *greater* threat to Plaintiff's business. While the absence of a cover charge may be more injurious to Plaintiff's business, the absence can also be interpreted as lack of willfulness. The statute specifically targets only those offenders who willfully seek to gain a commercial or personal advantage from its piracy. An establishment that does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's framers.

ers who have pirated similar Programs on previous occasions, and who need an especially severe financial deterrent. *See, e.g., Joe Hand Promotions, Inc. v. De Miguel,* No. C99–02171, at *3. But there are no allegations of such repeat behavior, and no evidence of otherwise egregious willfulness that would warrant harsh punitive damages in this case. Accordingly, the Court will award the statutory minimum of $1,000 under 47 U.S.C. § 605(e)(3)(C)(i)(II), and will not enhance the statutory damages allowed under section 605(e)(3)(C)(i)(II). *See Don King Productions/Kingvision v. Carrera,* 1997 WL 362115 (N.D.Cal.).[3]

### B. Compensatory Damages

Plaintiff requests $10,000 for violation of 17 U.S.C. section 501, $3,000 for each of two state statutory violations, and $2,000 for each violation of two common law claims. Plaintiff contends that this amount is an approximation of actual damages (calculated by multiplying the maximum capacity of the establishment by a per seat charge of $10 to $20 and adding an unspecified technical transmission fee) combined with lost future sales to non-pirating establishments.

In the past, this Court has refused to award cumulative damages for separate claims stemming from the same conduct. Instead, the Court has awarded a total amount of compensatory damages for both actual and future losses. *See Joe Hand Promotions, Inc. v. De Miguel,* No. C99–02171, at *4. To calculate actual losses, the Court multiplies the *actual* number of patrons by a reasonable cover charge. *See id* at *4. Here, the Court finds that Plaintiff is entitled to $540 in total for compensatory damages: $240 for actual loss (16

patrons multiplied by a per seat charge of $15) and $300 for any possible loss from future sales. *See Joe Hand Promotions, Inc. v. Pete,* 1999 WL 638215, at *2 (awarding $200 in lost future sales where defendant's establishment had eight patrons at time of violation). *But see Kingvision Pay–Per–View, Ltd. v. Arias,* 2000 WL 20973, at *3 (refusing to award damages based on future losses).

### C. Costs and Attorney's Fees

Plaintiff requests $2,500 in attorney's fees and $475 in costs against Defendants. Although Plaintiff is entitled to an award of reasonable attorney's fees and costs by right under § 605, *TCI Cablevision of New England v. Pier House Inn, Inc.,* 930 F.Supp. at 732, Plaintiff's request is too conclusory to permit an assessment of its reasonableness. Moreover, the Court is wary of granting unreasonable fees for similar work done in two virtually identical cases where seemingly boiler-plate pleadings are utilized. *See Entertainment By J&J, Inc. v. Mario Perez,* No. C99–4261 TEH (N.D.Cal.), *currently pending.* Therefore, the Court orders Plaintiff to submit an itemized list of attorney's fees detailing the actual time expended by task, and the hourly rate charged by July 7, 2000.

### CONCLUSION

For the foregoing reasons, and after careful consideration of the relevant case law, the declarations, and the written and oral presentations made in this action, and good cause appearing therefore, the Court directs the clerk to enter judgement for Plaintiff against Defendant Fred Marker, individually and d/b/a Blue Bird Cocktails

---

**3.** One oft-cited reason for applying § 605 instead of § 553 in these cases is because "§ 605 provides for a greater potential recovery of damages than § 553. Moreover, § 605 permits prevailing plaintiffs to recover their costs and attorneys' fees as a matter of right, whereas prevailing parties under § 553 may recover such only if a trial judge issues such an order." *TCI Cablevision of New England v. Pier House Inn, Inc.,* 930 F.Supp. at 732

(D.R.I.1996). In this case, however, the choice of which provision to apply does not affect the Court's calculation of statutory damages since the allegations did not justify an award even approaching the statutory limits under either provision. Thus, although the Court chooses to apply § 605 in this case, it awards an amount of statutory damages that would be permissible under *either* § 605 or § 553's statutory cap.

for $1,540 in combined damages. The Court orders Plaintiff to submit an itemized list of attorney's fees and costs no later than July 7, 2000, at which time the Court will make a determination as to the appropriate amount of fees and costs to award.

**IT IS SO ORDERED.**