**COMCAST OF MASSACHUSETTS I, INC., l/k/a AT & T Broadband, Plaintiff**

v.

**Marco NARANJO, Defendant**

**No. CIV.A. 03–10066–REK.**

United States District Court, D. Massachusetts.

Feb. 19, 2004.

John M. McLaughlin, McLaughlin Sacks LLC, Northampton, for Comcast of Massachusetts I, Inc., l/k/a AT & T Broadband, Plaintiff.

### Memorandum and Order

KEETON, Senior District Judge.

### I. Pending Matters

Pending for decision are matters associated with the following filings:

(1) Plaintiff's Motion for Default Judgment (Docket No. 11, filed July 14, 2003), with Affidavit of John M. McLaughlin, Esq. (Docket No. 12, filed July 14, 2003), and Memorandum of Law in Support of Plaintiff's Motion for Default Judgment & Assessment of Damages (Docket No. 13, filed July 14, 2003); and

(2) Plaintiff's Post–Hearing Memorandum in Support of Plaintiff's Motion for Default Judgment & Assessment of Damages (Docket No. 18, filed October 20, 2003), with Affidavit of John M. McLaughlin, Esq. (Docket No. 17, filed October 20, 2003).

### II. Relevant Background

On January 10, 2003, plaintiff filed the Complaint in this suit, alleging that defendant used a statutorily prohibited electronic device unlawfully to intercept plaintiff's cable television signal.

On February 19, 2003, plaintiff moved for an entry of default as to defendant. On February 24, 2003, this court ordered default against defendant.

On July 14, 2003, plaintiff moved for default judgment against defendant (Docket No. 11). On August 12, 2003, this court granted plaintiff's motion for default judgment and set a hearing to determine damages.

On September 12, 2003, this court held a hearing to receive oral argument, testimony, and other evidence with respect to the determination of damages. Plaintiff requested and was granted leave to file a post-hearing memorandum.

On October 20, 2003, plaintiff filed a post-hearing memorandum in support of its position regarding damages.

### III. Relief Requested

Plaintiff seeks civil damages and remedies under 47 U.S.C. § 553(c) (2000). The

relevant provisions of section 553(c) provide:

(2) The court may—

(A) grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)(1) of this section;

(B) award damages as described in paragraph (3); and

(C) direct the recover of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails.

(3)(A) Damages awarded by any court under this section shall be computed in accordance with either of the following clauses:

(i) the party aggrieved may recover the actual damages suffered by him . . . or

(ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.

47 U.S.C. § 553(c).

Plaintiff requests all the relief possible under 553(c)(2)—a final injunction, damages, costs, and attorneys fees. With respect to damages, plaintiff chooses the statutory damages available under 553(c)(3)(A)(ii), an award of between $250 and $10,000 to be determined by this court, rather than actual damages. Plaintiff also seeks post-judgment interest on the judgment under 28 U.S.C. § 1961.

## IV. Disposition Regarding Relief Requested

### A. Damages

#### 1. Introduction

The statute provides little guidance as to the determination of statutory damages, stating only that the court should select a "just" amount no less than $250 and no more than $10,000.

Plaintiff proffers that this court award an amount close to $10,000, and contends that case law together with the record in this case support such a determination. I am unpersuaded for the reasons stated below.

#### 2. Inconsistencies and Errors

Plaintiff has been inconsistent in its requests, asking for $20,000 in the Complaint (Docket No. 1, at 3), $10,000 in the Motion for Default Judgment (Docket No. 11, at 2), $10,000 and then $14,000 in the Memorandum in Support of the Motion for Default Judgment (Docket No. 13, at 7, 8), and, most recently, $7,000 in the Post-Hearing Memorandum (Docket No. 18, at 9). Other errors include innumerable punctuation errors, typographical errors, and repeatedly misspelling "surreptitiously" as "seriptiously." I attribute no special significance to the inconsistencies and treat them instead as errors adding to a total of filings that are generally poor in quality.

#### 3. Plaintiff's Example Cases Are Not Compelling Precedent

Plaintiff cites the following three cases as cases in which courts from the Second Circuit of the United States awarded high statutory damages: *Community Television Systems, Inc. v. Caruso*, 284 F.3d 430 (2d Cir.2002); *Cablevision Systems New York City Corp. v. Lokshin*, 980 F.Supp. 107 (E.D.N.Y.1997); *American Cablevision of Queens v. McGinn*, 817 F.Supp. 317 (E.D.N.Y.1993). These cases in fact award damages based on *two* statutes—47 U.S.C. § 553, the statute in question here, and 47 U.S.C. § 605. Section 553 addresses unauthorized interception of cable, and

section 605 addresses unauthorized interception of wire or radio communication. In relation to the issues here, the statutes are virtually identical, and I, as did plaintiff, will rely on cases that award damages under either or both statutes.

Plaintiff asserts that these cases resemble "the case at bar" (Pl.'s Memo., Docket No. 13, at 4–5), implying that the cited cases should be considered compelling precedent here. Plaintiff in fact states once that because a case resembles the "case at bar," the case "provides compelling, persuasive, Federal Appellate authority to justify a significant statutory damage award against this Defendant." (*Id.* at 5.)

The cases cited by plaintiff, however, are compelling precedent only in certain narrow circumstances, which do not exist here. A case is compelling precedent only with regard to situations that are factually identical or closely similar in all material respects to the case at bar.

This fact-based limitation applies here because the three cases cited by plaintiff offer no reasoned formula or generally applicable legal precedent. For example, in *McGinn* the district court stated the following conclusion with no further explanation or reasoning:

> Section 553(c)(3)(A)(ii) permits award of statutory damages no less than $250.00 and no greater than $10,000.00. With that parameter in mind, I hold that defendant is liable for damages in the amount of $250.00 per converter box, per month that unauthorized service was received.

817 F.Supp. at 320. The appellate case cited by plaintiff, *Caruso,* provides no discussion of the choice between low and high statutory damages, although it affirms the lower court. The lower court delivered a one sentence conclusion: "Here, the court considers maximum in statutory damages,

to be assessed against each defendant individually, to be just." *Community Television Sys., Inc. v. Caruso,* 134 F.Supp.2d 455, 461 (D.Conn.2000).

Each case presents *one* court's discretionary determination of the "just" statutory damages *for a particular set of facts.* The court in the third case cited by plaintiff, *Lokshin,* explained this case-by-case determination of statutory damages:

> In exercising its discretion to award damages, this court should consider both *the nature of the violation* in light of the statutory scheme involved, as well as the *particular circumstances* concerning the defendant's actions in this case in determining damages.

980 F.Supp. at 113 (emphasis added).

Plaintiff has not shown that the case at bar resembles the three cited cases to the degree that this court should consider the cited cases compelling precedent.

Plaintiff makes the following contentions regarding the similarity of the case here to the cited cases:

> In both the *Community Television* case and the case at bar, the Defendants used descrambling devices to covertly intercept the Plaintiff's television signals without authorization or payment. . . .
>
> . . . [I]n the case of *American Cablevision of Queens v McGinn,* . . . the non-commercial defendant scriptiously [sic] used modified converters/descramblers to covertly obtain the plaintiffs cable television signals just like the defendant in the case at bar. . . .
>
> In the case of *Cablevision Systems, New York City Corporation v. Lokshin,* . . . the defendant was, again, similarly situated to the Defendant in the case at bar. The court in *Lokshin* found that the defendant used a black box to covertly obtain plaintiff's cable television signals.

(Pl.'s Memo., Docket No. 13, at 5.) In short, plaintiff asserts that the case here resembles the cases it cites to the extent that a noncommercial·defendant used a descrambling box covertly to obtain a plaintiff's cable television signals.

But these facts also describe two other cases from the Second Circuit (which plaintiff did not cite) that fail to follow plaintiff's example cases. *Time Warner Cable of New York City v. Barnes,* 13 F.Supp.2d 543 (S.D.N.Y.1998), and *Cablevision Systems New York City Corp. v. Leath,* 2002 WL 1751343 (S.D.N.Y.2002), also involved the noncommercial use of descramblers to intercept cable signal covertly. The courts in these cases, however, awarded the statutory *minimum* in damages. Accordingly, I am not persuaded that the factual similarities relied upon by plaintiff render plaintiff's example cases compelling precedent.

Moreover, close examination of the case here reveals at least one significant difference between this case and the cases cited by plaintiff. Here, plaintiff presents no direct evidence of the length of time over which defendant covertly intercepted cable signal. In two of the cases plaintiff cites as examples, however, the plaintiff offered purchase records that showed the dates on which the defendant or ·defendants acquired the unauthorized descramblers. *See Lokshin,* 980 F.Supp. at 111 ("Global's records indicated that on January 16, 1991, Lokshin purchased an unauthorized two-piece cable television decoding device."); *Caruso,* 134 F.Supp.2d at 458 ("Radil's records show that the [defendants] all obtained descramblers made by Radil during 1992. Those records show the date the descrambler was ordered and the date it was delivered, as well as each device's model and serial number."). I am thus further persuaded that it would be inappropriate for me to proceed as if the cases cited by plaintiff compel a determination of high statutory damages in the case here.

Finally, this court is a court of the First Circuit. That the cited cases arise exclusively from the Second Circuit further limits their persuasive effect in the First Circuit.

## 4. Plaintiff's Factor–Based Analysis Fails

In addition to citing three "example" cases, plaintiff also contends that "case law" reflects the "consider[ation of] a number of factors when assessing statutory damages." (Pl.'s Memo., Docket No. 13, at 5.) Plaintiff asserts that courts look to the willfulness of defendant's violation, the importance of "general and specific" deterrence, defendant's cooperation with plaintiff, and actual damages in determining the appropriate award of statutory damages. (*Id.* at 5–7.) According to plaintiff, these factors militate in favor of an award of high statutory damages when applied to this case. I am not persuaded that they do so.

Plaintiff offers no citations or case references anywhere for the alleged "case law" from which it draws these factors. This deficiency raises several issues. First, a lack of citations creates an obvious question as to the accuracy of plaintiff's assertions. Second, assuming some courts did refer to these factors, I have no knowledge as to how the courts applied them. I must be able to compare the facts here to the facts in the other cases and to understand the relative weight each of these factors received in context in the various cases. The factors cannot simply be extracted from "case law" and then applied here in a vacuum. Third, to evaluate the degree to which the case law is binding, I must know the courts and Circuits in which the case law was decided. I am unaware of any First Circuit precedent regarding a civil

action against a noncommercial violator of 47 U.S.C. § 553, the particular issue here.

In oral argument at the hearing on September 12, 2003, plaintiff referred to its filings when discussing the alleged "case law." Only one of the cases cited by plaintiff in its filings might be the "case law" to which plaintiff refers. The court in *Lokshin* does consider estimates of actual damages, willfulness of the defendant, and the importance of deterrence.

But *Lokshin*, which plaintiff in fact never cites as authority for the offered factors, does not remedy plaintiff's failure to cite cases in point. *Lokshin* is *one* case, and plaintiff clearly claims that "*courts*" have considered a number of factors. (Pl.'s Memo., Docket No. 13, at 5 (emphasis added); Pl.'s Post–Hearing Memo., Docket No. 18, at 7 (emphasis added).) Indeed, *Lokshin* does not support all of the assertions made by plaintiff. For instance, plaintiff argues that "[a]nother way of thinking about th[e] 'deterrence premium' is that the victim should receive the 'benefit of the doubt.'" (Pl.'s Post–Hearing Memo., Docket No. 18, at 8.) This interpretation of "deterrence" does not appear in *Lokshin*.

In any event, the decision in *Lokshin*, a case decided by the United States District Court for the Eastern District of New York, does not bind this court.

For the foregoing reasons, plaintiff fails to persuade this court that it must or should follow the proposed factors.

## 5. Determination of Statutory Damages

Under the statute, the determination of "just" statutory damages is, as plaintiff acknowledged at the hearing on September 12, 2003, generally a matter for exercise of a court's discretion. Plaintiff's failure to persuade together with the absence of First Circuit case law on the particular issue here leaves this court with no precedent it must or should follow. Accordingly, I conclude that the determination of statutory damages in this instance is one for the exercise of discretion.

■ Exercising discretion, I conclude that I should award as "just" statutory damages as reasonable an estimate of actual damages as the facts here allow.

In my view, the plain language of the statute does no more than offer statutory damages as an *alternative* to actual damages. The language reads simply: "Damages . . . shall be computed in accordance with either of the following clauses." 47 U.S.C. § 553(c)(3)(A). The statute delineates no difference or preference between the clauses. It is certainly *possible* to conclude that the statutory damages clause is intended to allow a court to impose greater damages than available under the actual damages clause. But the plain language offers no identified reason to reach that conclusion.

My view is supported in two ways by the very next section in the statute, 553(c)(3)(B). That section allows a court to do exactly what plaintiff strains to find in 553(c)(3)(A)(ii): impose increases of up to $50,000 to either actual or statutory damages as punishment for certain willful conduct. In addition, that the section allows *either* actual or statutory damages to be increased, with no reservations or specifications, is consistent with the inference that the two types of damages are coordinate alternatives.

I further note that another section, 553(c)(2)(A), allows a court to impose an injunction on defendants, which serves the other purpose that plaintiff (and also *Lokshin*) read into 553(c)(3)(A)(ii): deterring future violations. In particular, the court may "grant temporary and final injunctions . . . *to prevent or restrain viola-*

*tions* of subsection (a)(1) of this section." 47 U.S.C. § 553(c)(2)(A) (emphasis added).

The position taken by plaintiff, when carried through to its full implications, also leads to absurd results. Under plaintiff's theory, an aggrieved party may receive as statutory damages premiums to deter future conduct in addition to actual or estimated actual damages. Statutory damages, however, may not exceed $10,000. As a result, parties that have suffered large actual damages (greater than $10,000) cannot receive any deterrence premiums. But if any violators require an additional deterrence premium, it is those who have caused the largest amounts of harm.

For the foregoing reasons, I conclude that I should award as statutory damages no more than as reasonable an estimate of actual damages as the facts here allow. I look now to the facts of this case.

■ The record in this case consists of plaintiff's complaint and the testimony of plaintiff's one witness, an "area piracy specialist." I include the complaint because a default, which exists here, constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. *Greyhound Exhibitgroup Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992).

Having examined the complaint and the testimony of plaintiff's witness, I make the following findings of fact. On or about August 1998, defendant downgraded his cable television service to $6 per month. The customer must pay for some service in order for a cable box to work. On or about January 2000, plaintiff replaced defendant's descrambler, removing a descrambler that had been modified by defendant *or* some third party. On or about April 2000, plaintiff removed the replacement descrambler, which also had been modified by somebody, from defendant's possession. In 1999, expanded basic service and movie channels together cost approximately $80 per month. The cost for pay-per-view services varied by program. Most movies cost $1.99 or $2.99, adult movies cost $9.99, and special events such as boxing cost $30 per event. In 1999, movies were offered on four channels, twenty-four hours a day. Special events occurred at least once a month.

I can and do infer from the facts that plaintiff intercepted cable from August 1998 to April 2000 for a total of 20 months. I must estimate, however, how much and how often defendant engaged in the unauthorized interception of cable. Plaintiff offers no reasonable estimate of damages, stating only that the cost of all services could total over $500 a month. But no defendant could partake of all the cable services made available by the illegal descrambler, nor do I find it plausible that a defendant would order pay-per-view services 24 hours a day, every day of the month.

■ Based on the costs in my findings of fact, I conclude that $139 per month is a reasonable estimate of damages. I arrive at this number in the following way. I subtract the $6 per month for basic services that defendant did pay from the $80 per month for enhanced services. I then add to that number ($74) my reasonable estimate of 10 pay-per-view movies a month at an average cost of $2.50 each ($25). I then add a reasonable estimate of 4 additional pay-per-view selections a month at a cost of $10 each ($40). The per month damages totals $139. For the entire 20 months, estimated actual damages totals $2780.

Per month estimated actual damages

| | |
|---|---|
| $ 80 | monthly enhanced services |

$$-\$\ 6 \quad \text{monthly basic services fee}$$

$$\begin{array}{l} \underline{\$\ 74} \\ +\$\ 25 \end{array} = (10\ \text{movies} * \$2.50)$$

$$\begin{array}{l} \underline{\$\ 99} \\ +\$\ 40 \end{array} = (4\ \text{movies} * \$10.00)$$

$$\$139$$

Total estimated actual damages

$$\$139 * 20\ \text{months} = \$2780$$

I conclude that $2780 is as reasonable an estimate of actual damages as the facts here allow. Accordingly, I award plaintiff in the Final Judgment $2780 in statutory damages under section 553(c)(3)(A)(ii).

## B. Injunction

Section 553(c)(2)(A) allows a court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)(1) of this section." *Id.* For the purpose of deterring future violations, I issue in the Final Judgment a permanent injunction against defendant.

## C. Costs and Attorney's Fees

Section 553(c)(2)(C) authorizes this court to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." *Id.*

Plaintiff submits that it has incurred costs of $180.36, the total of the filing fee ($150) and the sheriff's service fee ($30.36). (Pl.'s Memo., Docket No. 13, at 8.) I will award plaintiff the requested costs.

Costs

$$\begin{array}{ll} \$\ \ 150 & \text{filing fee} \\ +\$\ 30.36 & \text{sheriff's fee} \\ \hline \$180.36 \end{array}$$

With regard to attorneys' fees, this circuit has followed the "lodestar" approach, which calculates reasonable attorneys' fees as "the number of hours reasonably expended multiplied by a reasonable hourly rate." *Furtado v. Bishop*, 635 F.2d 915, 920 (1st Cir.1980).

Plaintiff submits affidavits from plaintiff's counsel (McLaughlin Aff., Docket No. 12; McLaughlin Aff., Docket No. 17) in which plaintiff's counsel itemizes 5.7 hours of work on the case at bar. I credit the averments of plaintiff's counsel and conclude that 5.7 hours are a reasonably expended number of hours.

Plaintiff's counsel avers in his affidavits that he charges an hourly rate of $200 for his services. Based on my experience with attorneys in this bar, I conclude that $200 per hour is a reasonable hourly rate.

Accordingly, I conclude plaintiff should receive attorneys' fees for 5.7 hours of work by plaintiff's counsel at a rate of $200 per hour. I award plaintiff $1140 in attorneys' fees.

I award to plaintiff in the Final Judgment $1320.36 in costs and reasonable attorneys' fees.

Attorneys' Fees

$$5.7\ \text{hours} * \$200\ \text{per hour} = \$1140$$

Total Costs and Attorneys' Fees

$$\begin{array}{ll} \$180.36 & \text{costs} \\ +\$\ \ 1140 & \text{attorneys' fees} \\ \hline \$1320.36 \end{array}$$

## D. Post–Judgment Interest

Title 28 U.S.C. § 1961(a) states the following: "Interest shall be allowed on any money judgment in a civil case recovered in a district court." *Id.* Accordingly, the

Final Judgment grants post-judgment interest on the statutory damages, costs, and reasonable attorneys' fees awarded to plaintiff in this case. The interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1–year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.*

### ORDER

For the foregoing reasons, the Clerk is ORDERED to enter forthwith on a separate document a Final Judgment as follows:

For the reasons stated in the Memorandum and Order of this date, it is ORDERED:

(1) Judgment for plaintiff.

(2) Plaintiff is awarded $2780 in statutory damages and $1320.36 in costs and reasonable attorneys' fees.

(3) Defendant Marco Naranjo is hereby permanently enjoined from intercepting or receiving unauthorized cable television services, by any manner or method, including the use or modification of electronic equipment designed for the unauthorized interception of cable television services.

(4) Plaintiff shall receive post-judgment interest on the monetary awards pursuant to 28 U.S.C. § 1961(a), at the federal judgment rate applicable on the date of this judgment (1.24%).

### Final Judgment

For the reasons stated in the Memorandum and Order of this date, it is ORDERED:

(1) Judgment for plaintiff.

(2) Plaintiff is awarded $2780 in statutory damages and $1320.36 in costs and reasonable attorneys' fees.

(3) Defendant Marco Naranjo is hereby permanently enjoined from intercepting or receiving unauthorized cable television services, by any manner or method, including the use or modification of electronic equipment designed for the unauthorized interception of cable television services.

(4) Plaintiff shall receive post-judgment interest on the monetary awards pursuant to 28 U.S.C. § 1961(a), at the federal judgment rate applicable on the date of this judgment (1.24%).